# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: COMMERCIAL MONEY CENTER, INC., EQUIPMENT LEASE LITIGATION | : : : : | MDL Case No. 1:02CV16000 (MDL Docket No. 1490) |
| | : : | JUDGE O'MALLEY |
| THE HUNTINGTON NATIONAL BANK, | : : | |
| Plaintiff, | : : | Case No. 02CV16017 |
| v. | : : | **MEMORANDUM OF OPINION** |
| AMERICAN MOTORISTS INSURANCE COMPANY, | : : : | **AND ORDER** |
| Defendant. | : : | |
| _____ | : : | |
| AMERICAN MOTORISTS INSURANCE COMPANY, | : : : | |
| Third-Party Plaintiff, | : : | |
| v. | : : | |
| BLAINE TANNER, GUARDIAN CAPITAL XVI, LLC, and GUARDIAN SHIELD HOLDINGS, LTD., | : : : : | |
| Third-Party Defendants. | : | |

This action is before the Court upon a renewed motion by American Motorists Insurance Company ("AMICO") to transfer venue of this action to the Southern District of California. (02-16017, Doc. 74). AMICO previously filed a similar motion requesting transfer of this action (02-16017, Doc. 57). For the reasons set forth in the Court's Memorandum and Order issued on March 2, 2007 (02-16017, Doc. 67), however, the Court reserved ruling on AMICO's prior

venue transfer motion.

AMICO filed the instant motion on September 14, 2010, and opposition to the motion was filed on December 15, 2010 (02-16014, Doc. 77) by Guardian Capital XVI, LLC ("Guardian XVI"), Guardian Shield Holdings, Ltd. ("Guardian Shield") (collectively, the "Guardian Entities"), and Blaine Tanner (collectively with the Guardian Entities, "Guardian").  AMICO did not submit any reply papers.  This motion is ripe for ruling, and the Court has considered the entirety of the submissions by all parties.  For the reasons set forth herein, AMICO's motion to transfer venue is denied.

I.      **Procedural Background**

This action originally was part of a group of actions transferred to this Court by order of the Judicial Panel on Multidistrict Litigation ("the MDL Panel"), issued on October 25, 2002, pursuant to 28 U.S.C. § 1407. (02-16000, Doc. 1).  This Court ordered that these actions be coordinated for pretrial purposes. (02-16000, Doc. 2).

On October 6, 2010, the Court issued a Memorandum and Order finding that "all common fact and expert discovery is complete in these cases, and all case-wide issues amenable to resolution in this transferee court have been resolved. . . ." (02-16000, Doc. 2479).  Following the Court's October 6, 2010 Memorandum and Order, various cases were remanded to their transferor districts for trial.  The within action, however, was filed in this district and, accordingly, remains in this district for trial absent a ruling that transfer to another district is appropriate.

This action was filed on May 17, 2002 by Huntington National Bank ("Huntington"), asserting claims against AMICO and Anthony & Morgan Surety Company ("A&M"). (02-

16017, Doc. 1).   On July 12, 2002, AMICO filed an answer, denying proper venue in the Northern District of Ohio and asserting counterclaims against Huntington. (02-16017, Doc. 12). AMICO also asserted, as an affirmative defense, that venue of the action should be transferred to the Southern District of California.   On December 18, 2002, AMICO filed an Amended Third-Party Complaint and Cross-Claim against Guardian. (02-16017, Doc. 33).   Guardian filed an Answer and Counterclaims against AMICO on January 27, 2003. (02-16017, Doc. 37). AMICO's Answer to Guardian's counterclaims also denied proper venue in the Northern District of Ohio, and asserted that this matter should be transferred to California. (02-16017, Doc. 39).

On December 7, 2005, the parties filed a stipulation of dismissal, which reflected the settlement of all claims as between AMICO and Huntington. (02-16017, Doc. 50). Subsequently, by Order dated September 15, 2008, the Court granted a motion by AMICO for summary judgment on the counterclaims asserted against it by Guardian. (02-16000, Doc. 2209). Accordingly, the only claim remaining for determination in this action is AMICO's third-party claim against Guardian for fraud and rescission.

In February 2002, AMICO filed suit in the Southern District of California against CMC, Michael Anthony, and several individual CMC insiders.   That action was consolidated in the MDL proceedings as *American Motorists Insurance Co. v. Commercial Money Center, Inc., et al.*, 1:02CV16003.  Following issuance of this Court's October 6, 2010 Memorandum and Order, Case No. 02-16003 was remanded to the Southern District of California for trial by Order of the MDL Panel dated November 10, 2010 (02-16003, Doc. 23).  As of the date of this Opinion, that action remains pending in the Southern District of California as Case No. 3:02CV00218.[1]

---

[1] In July 2002, AMICO also sued several banks in the Southern District of California.   The bank suit was consolidated in the MDL proceedings as *American Motorists Insurance Co. v. United Security Bank*, 1:02CV16024. On July 1, 2009, counsel advised the Court that Case No. 02-16024 had been resolved.  Although the parties apparently neglected to file a formal stipulation of dismissal, no further filings were made in the case, and the Court

AMICO asserts that the within action should be transferred to California, where it can proceed together with the pending related case.

## II.    Factual Background

The dispute in these actions involves the liability of the Sureties[2] on various surety bonds issued in connection with certain transactions between the Banks and Commercial Money Center, Inc. ("CMC").   CMC's business involved the leasing of equipment and vehicles to numerous lessees in exchange for lease payments.  CMC then pooled the leases and sold them to institutional investors.   CMC's leasing business collapsed in early 2002, and the Banks claim millions of dollars in losses from these transactions.  The Banks have commenced these actions against the Sureties to recover on the surety bonds associated with the transactions.  The Sureties raise CMC's fraud as a defense to the Banks' claims and seek to rescind the surety bond transactions based on fraud in the inducement.

The Guardian Entities are single-purpose entities, which were formed by a sole principal, Blaine Tanner, for the purpose of purchasing CMC lease pools.  The Guardian Entities purchased a total of fourteen lease pools and, in order to consummate the purchases, secured loans from various banks.   In most cases, the transactions were structured in such a way that payments to lenders were made from the income stream of the lease pools.  Each lease pool, and/or its income stream, was guaranteed by one of the various Sureties involved in these actions.

This action involves two Guardian Entities, Guardian XVI and Guardian Shield (as well

---

subsequently closed that case on May 25, 2011. (02-16024, Doc. 66).  As a result, Case No. 02-16024 was not remanded to the Southern District of California for trial and will not be addressed further in this Opinion.

[2] Where not defined herein, capitalized terms used in this Opinion have the meanings ascribed to them in the Court's Consolidated Rulings issued August 19, 2005 (02-16000, Docs. 1708, 1709), and in the Bench Trial Opinion issued May 28, 2010 (02-16000, Doc. 2459).

as their principal, Blaine Tanner).  Huntington was the Guardian Entities' lender in connection with the transactions involved in this action.  With respect to all of the lease pools that are the subject of this action, the surety was AMICO.  In this transaction, Guardian XVI purchased lease income rights from CMC, and later assigned the lease income stream, and associated lease bonds, to Huntington.[3]

In this action, AMICO's third-party fraud claim against Guardian is based primarily upon an "anonymous warning letter" received by Guardian in February 2001.  This letter, which the parties now agree was authored by Charles Whitfield (a former CMC employee) and mailed to Guardian from California, characterized CMC's lease bond program as a Ponzi scheme, and revealed certain questionable aspects of the personal backgrounds of CMC's principals.  Mr. Whitfield's letter described prior fraudulent schemes by CMC's principals, and also accused broker Michael Anthony (principal of A&M) of participating with CMC in the lease bond scheme.

It is undisputed that, on February 13, 2001, Tanner faxed a copy of the Whitfield letter to Michael Anthony in southern California, along with a fax cover sheet including Tanner's handwritten note: "This person is tracking the UCC filings.  Very bad."  Tanner also concedes that he discussed the allegations contained in the Whitfield letter with both Michael Anthony and CMC principal Wayne Pirtle, via telephone calls to California.  Subsequent to Guardian's receipt of the Whitfield letter, and without knowledge thereof, AMICO issued lease bonds to CMC in July 2001, and entered into a Sale and Servicing Agreement with CMC and Guardian XVI on September 7, 2001.

---

[3] CMC initially assigned the lease income stream and bond rights in the pool to Guardian Shield and Sky Bank, N.A. ("Sky"), in order to permit CMC to access Guardian Shield's line of credit at Sky.  Subsequently, CMC made a second assignment of its income stream and bond rights to Guardian XVI.

## III.    Discussion

AMICO requests that this action be transferred to the Southern District of California, arguing that (1) this action could have been brought there; (2) the majority of the events relevant to this litigation occurred there; (3) the majority of the key witnesses reside there; (4) related litigation already is pending there; and (5) California law applies to the relevant issues in this action.  AMICO argues, essentially, that the center of the CMC fraud scheme, of which it alleges that Guardian had knowledge, was CMC's headquarters in San Diego County, California. Accordingly, AMICO urges, the Southern District of California is the appropriate venue for this action.

Guardian, on the other hand, opposes AMICO's motion, asserting that this action could not have been brought in California, because California lacks personal jurisdiction over the Guardian Entities and Tanner.  Guardian further argues that, since a significant portion of the relevant events occurred in Ohio, AMICO cannot satisfy its burden of proof to demonstrate that transfer is warranted.  Guardian argues, finally, that since the Northern District of Ohio is a proper venue, the Court should not interfere with the plaintiff's venue choice absent a showing of severe hardship to AMICO.

Transfer of venue in this matter is governed by 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).  In a diversity action, a district where a case might have been brought means "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(a)(2).  The movant seeking transfer of the action bears

the burden of demonstrating that the forum to which it seeks transfer "is the more convenient one vis a vis the plaintiffs' initial choice." *International Union, UAW v. ALCOA*, 875 F. Supp. 430, 433 (N.D. Ohio 1995). *See also Bacik v. Peek*, 888 F. Supp. 1405, 1414 (N.D. Ohio 1993)(transfer appropriate only where balance of relevant factors weighs "strongly in favor of transfer.").

It is well established that finding a venue in which a case "might have been brought" requires a determination that the defendant would be subject to personal jurisdiction in the transferee court. *See, e.g., Travelers Cas. & Sur. Co. v. Phila. Reinsurance Corp.*, 2001 U.S. Dist. LEXIS 10913, *13 (N.D. Ohio May 10, 2001).   A defendant is subject to personal jurisdiction where such jurisdiction is permitted by the state's long-arm statute, and where the exercise of such jurisdiction does not violate due process. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  The California legislature has declared that California's long arm statute should be construed as extending to the limits of due process. *See* Cal. Code. Civ. Proc. § 410.10.  Accordingly, personal jurisdiction over a defendant in California is appropriate where that defendant has minimum contacts with California "such that the assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach Co.*, 453 F.3d at 1155, *quoting International Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945).

The Ninth Circuit has articulated a three-part test to determine whether a defendant has the requisite "minimum contacts" to support the exercise of jurisdiction:

> (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.

*Pebble Beach Co.*, 453 F.3d at 1155, *quoting Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  The first prong is satisfied where a defendant purposefully engages in conduct in the forum, or the defendant's conduct outside the forum is purposefully directed to the forum. *See Pebble Beach Co.*, 453 F.3d at 1156.  Conduct by the defendant outside the forum must be intentional, expressly aimed at the forum state, and cause harm in the forum, which the defendant knows is likely to be suffered in the forum state. *See id.*

Once a court has determined that personal jurisdiction exists over the defendants, and thus that an action could have been brought in the district to which transfer is sought, the district court has discretion to consider the motion for transfer "according to an individualized, case-by-case consideration of convenience and fairness. . . ." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)(internal quotations omitted).  The Sixth Circuit has held that, "in ruling on a motion to transfer under §1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991), *quoting Stewart Org.*, 487 U.S. at 30.  In balancing the relevant private and public interest factors, the Court must consider the convenience of all parties, since "transfer of venue is inappropriate where it would serve only to transfer the inconvenience from one party to the other." *ALCOA*, 875 F. Supp. at 433.

The significant private interest factors a court must consider include "the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses; [and] the cost of obtaining attendance of unwilling witnesses . . . ." *Rustal Trading US, Inc. v. Makki*, 2001 U.S. App. LEXIS 19062, *10 (6th Cir. Aug. 21, 2001).  In balancing

these factors, the court should consider certain case-specific factors, including "(1) the nature of the suit; (2) the place of events involved; (3) relative ease of access to sources of proof; (4) nature and materiality of testimony to be elicited from witnesses who must be transported; and (5) residences of parties." *Sirak v. J.P. Morgan Chase & Co.*, 2008 U.S. Dist. LEXIS 94328, *4 (N.D. Ohio Nov. 5, 2008), *citing Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F. Supp. 2d 1039, 1049-50 (S.D. Ohio 2002).  Relevant public interest factors include the administrative burden of proceeding in courts with congested dockets; the burden of imposing jury duty on people of a community having no connection with the litigation; the desirability of holding a trial nearest to those affected most by it; and the appropriateness of holding a trial in a diversity case in a court most familiar with the governing law. *See Sirak*, 2008 U.S. Dist. LEXIS 94328, at *10-11.

Following the 1990 revision to the Federal Rules, proper venue of a case is not limited to the district that is the "best" venue, or in which the most substantial events gave rise to the claims at issue. *See First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998). *See also Setco Enters., Corp. v. Robbins*, 19 F.3d 1278, 1280-81 (8th Cir. 1994)(courts "no longer ask which district . . . is the 'best' venue . . . .  Rather, [they] ask whether the district the plaintiff chose had a substantial connection to the claim . . . .").  "The facts are not weighed to see which district has a more substantial connection to events giving rise to the action.  So if a substantial part of the events occurred [in this district], venue would still be proper in this district even if a majority of events occurred elsewhere." *Tranzonic Cos. v. Markowitz*, 2005 U.S. Dist. LEXIS 9865, *3 (N.D. Ohio May 24, 2005)(internal citations omitted).  Finally, in determining venue transfer motions, this Court consistently has considered plaintiff's choice of venue as a factor, although not a factor "of paramount importance." *ALCOA*, 875 F. Supp. at 433 (O'Malley, J.);

*see also Fed. Ins. Co. v. CVS Revco D.S., Inc.*, 2009 U.S. Dist. LEXIS 56876, *16 (N.D. Ohio Jun. 16, 2009)(O'Malley, J.)("this court has consistently treated the plaintiff's choice of forum as *one* of the relevant factors in the § 1404(a) analysis, *i.e.*, it is a factor to be weighed equally with other relevant factors.")(emphasis in original; internal quotations omitted).

### A.      AMICO's Position

AMICO contends that, since this case could have been brought in the Southern District of California, the Court has discretion to conduct a balancing analysis and weigh the section 1404 factors in determining its motion for transfer.  According to AMICO, all of the section 1404 factors weigh heavily in favor of transfer.  AMICO contends that a "substantial part" of the events giving rise to Huntington's claims (and the related counterclaims and third-party claims) arose in California, since (1) both CMC and A&M operated out of southern California; (2) the lease bonds were issued and executed in that district; (3) leases were serviced out of CMC's offices in Escondido, California, and all lease documents were stored there pursuant to a contractual requirement; (4) CMC and CSC orchestrated and carried out their fraud from their offices in southern California; (5) Blaine Tanner contacted Michael Anthony, principal of A&M, in California regarding the CMC transactions, and came to California on several occasions to discuss the transactions, and to socialize with Michael Anthony; (6) Tanner received the Whitfield letter from California and forwarded that letter to California via fax to Michael Anthony; and (7) Tanner discussed the allegations contained in the Whitfield letter during phone discussions with Anthony and Pirtle in California.

AMICO also apparently relies on the extensive nature of the business dealings between the Guardian Entities and CMC, which did business primarily in California.  AMICO points out that the Guardian Entities were formed for the specific purpose of doing business with CMC.

AMICO asserts that, in connection with the CMC lease bond transactions, the Guardian Entities (1) borrowed money from CMC in order to pay the commitment fees and security deposits required by their lenders; and (2) set up a line of credit for CMC to access to fund leases, in exchange for payment of fees by CMC.  For all of these reasons, AMICO contends, this case properly could have been commenced in the Southern District of California.

AMICO argues that both public and private interest factors in this case also weigh in favor of transfer to the Southern District of California.  AMICO asserts that the vast majority of relevant witnesses—including a significant number of non-party witnesses—are located in California, and could be compelled to appear only in California.[4]  AMICO lists numerous former employees of CMC, including Mark Fisher, Ron Fisher, Brian McMichael, Robin Jacobs, Eric McMichael, Keith Caneva, Bill Hanson, Kelly Fisher Buh, Dean Ambrosini, and Kitty Chisholm.  AMICO also includes as relevant witnesses Michael Anthony and his staff; David Noddle (AMICO's California underwriter) and other California underwriting staff; Michael Huhn (AMICO's forensic accounting expert, who also is expected to testify in the related California case); CMC's bankruptcy trustee; and the accountant to CMC's bankruptcy trustee.  While AMICO states the positions held by each of these individuals, it does not, in most cases, specifically describe the testimony that each witness is expected to provide.

According to AMICO, the only Ohio individual involved in these transactions was Blaine Tanner, who traveled to California on several occasions to meet with Anthony and CMC personnel.  Moreover, AMICO asserts, Tanner now resides in Arizona, and could easily travel to California for trial.

AMICO further argues that the lease bonds and other transaction documents were

---

[4] *See* Fed. R. Civ. P. 45(b)(2).

11

drafted, negotiated, and executed in California, and that the lease files have been stored at CMC's office in Escondido.  Moreover, AMICO argues, A&M maintained its documents at its offices in San Clemente, California.

AMICO argues, finally, that public interests, including judicial efficiency and local interest, favor transfer to California, since (1) the Court has found that, in the absence of an express choice-of-law provision, the transaction documents are governed by California law; (2) California law should apply to this case in any event, since California has the most significant relationship to the parties and the transaction; and (3) California has a stronger interest in uniformly interpreting the bonds, which were issued in California to a California obligee (CMC).

## B.      Guardian's Position

Guardian argues, initially, that transfer to the Southern District of California is inappropriate because that district lacks jurisdiction over the Guardian Entities and Tanner, such that this action could not have been commenced in that district in the first instance.  Guardian asserts that, since the only claim remaining in this action is AMICO's claim of fraud by the Guardian Entities and/or Tanner, then AMICO bears the burden of showing that those defendants—and not simply CMC—performed some act or engaged in conduct that would constitute purposeful availment of "the privileges of conducting activity in [California]." *Pebble Beach*, 453 F.3d at 1155.

Guardian asserts that the contacts between Tanner and/or the Guardian Entities and California are de minimis and, in any event, unrelated to the claims asserted by AMICO against these parties.  Guardian argues that, although Tanner traveled to California in 1999 to conduct an initial investigation of the CMC opportunity, Tanner did not seriously begin to pursue the CMC opportunity until after he returned from California.  According to Guardian, the vast majority of

the negotiations conducted by Tanner (and/or his attorneys) in connection with the CMC transactions occurred via telephone or fax from Cleveland.  Tanner and his attorneys reviewed draft documents, and made revisions to those documents, in Cleveland.

In any event, insofar as AMICO's fraud allegations arise from the alleged failure of Guardian to disclose the information contained in the Whitfield letter to AMICO, Guardian asserts that such conduct did not occur in California and was not directed at California.  As AMICO concedes, it is an Illinois corporation, with its principal offices located in Illinois, and presumably would have suffered any harm resulting from the alleged nondisclosures in Illinois.

Although AMICO alleges that CMC orchestrated a fraud scheme from its offices in California, Guardian points out that AMICO does not allege participation by Guardian in CMC's fraudulent operations.   Rather, Guardian argues, AMICO has alleged no more than nondisclosure, which would necessarily have occurred in Ohio.  Since AMICO has alleged no conduct by Guardian in (or directed toward) California related to its allegations of fraudulent nondisclosure, Guardian asserts, a California district court would lack personal jurisdiction over the Guardian Entities and Tanner with regard to AMICO's fraud claim.

Even if the Court were to find that the Guardian Entities and Tanner were amenable to personal jurisdiction in California, Guardian argues that AMICO cannot satisfy its burden to establish that transfer is appropriate.  Guardian relies on case law holding that a defendant must show that the relevant factors weigh "strongly in favor of transfer." *Bacik*, 888 F. Supp. at 1414. Guardian contends that the balance of the relevant private and public interest factors in this case weighs in favor of venue in Ohio, not California.

Guardian contends that, although some aspects of the CMC lease bond transactions were centered in California, substantial elements of those transactions also occurred in Ohio.  Each of

13

the transaction closings occurred in Cleveland, and Mark Fisher physically traveled from California to attend each of those closings in person.  At closing, Mark Fisher paid Blaine Tanner the commissions owed to the Guardian Entities on the lease bond transactions.  In this context, Guardian argues, the balance of relevant factors does not weigh in favor of a California venue, and accordingly, venue transfer is inappropriate.

Guardian notes, further, that that the Guardian Entities and Tanner currently are parties to ten separate cases pending in the Northern District of Ohio,[5] all of which arise out of the same facts and circumstances, and involve assertions of fraud by various Sureties.  Guardian asserts that being required to litigate this case in San Diego, separate from the nine matters that it must litigate here in Ohio, poses a severe financial hardship to Guardian and engenders unnecessary duplication of litigation.

Guardian points out that AMICO has not claimed any inconvenience attributable to an Ohio forum, apart from the fact that it has a separate case pending against Michael Anthony and A&M in the Southern District of California.  Since AMICO is actually located in Illinois, Guardian maintains, it should be no more difficult for AMICO to litigate in Ohio than in California.  On the other hand, Guardian argues, the Guardian Entities maintain their principal places of business in Ohio, and Tanner maintains his residence in this state.

In light of (1) the Ohio residence of the Guardian Entities and Tanner; (2) the fact that a substantial portion of the events from which AMICO's claim arises occurred in Ohio; and (3) AMICO's burden, as movant, to demonstrate that California is a more convenient forum than Ohio, Guardian argues that venue transfer is not warranted.  Rather, Guardian asserts, in the circumstances presented here, a transfer of venue to the Southern District of California would

---

[5] Case Nos. 02-16012, 02-16017, 02-16018, 02-16019, 02-16022, 03-16002, 03-16003, 03-16004, 03-16005, and 03-16006.

14

"merely transfer the inconvenience of the chosen venue from [AMICO] to [Guardian]." *ALCOA*, 875 F. Supp. at 433.[6]

While AMICO relies on the maintenance of documents in California, and claims a resulting ease of access to documents in that state, Guardian maintains that the location of documents is no more than a minor consideration in the venue analysis. Guardian relies on *Invacare Corp. v. Sunrise Med. Holdings, Inc.*, 2004 U.S. Dist. LEXIS 28169, *14-15 (N.D. Ohio Dec. 15, 2004), in which this Court held:

> While defendants stress the location of documentary evidence in California, courts have viewed the 'location of documentary evidence [as] a minor consideration' because it 'may easily be sent by mail, copied or even faxed to a remote location.' (internal citation omitted). Therefore, the Court gives this factor minor consideration but finds that it does not weigh heavily in favor of transfer in light of the fact that plaintiffs' documents are in fact located in Ohio.

*Invacare*, 2004 U.S. Dist. LEXIS 28169, at *14-15. Guardian argues that, particularly in this case, where all parties have been afforded the opportunity to engage in extensive discovery, and all relevant documents have been copied, scanned and made available in electronic format, this factor cannot weigh strongly in favor of venue transfer.

Guardian also challenges AMICO's assertion that the majority of witnesses relevant to its fraud claims against Guardian reside in California. Guardian points out, first, that AMICO has made no showing that these nonparty witnesses are unwilling to appear in Ohio. In this regard, Guardian relies on *Duha v. Agrium, Inc.*, 448 F.3d 867, 877 (6th Cir. 2006)(little weight given to the factor of availability of compulsory process where the movant fails to show unwillingness to testify).

---

[6] Guardian further asserts that the facts underlying its affirmative defenses of estoppel and unclean hands involve conduct by AMICO directed at the Guardian Entities and Tanner in their home state of Ohio. Given the Court's conclusions herein, the Court need not address this alternative argument.

Guardian further asserts that very few of the witnesses material to AMICO's fraud claim actually reside in California.  Guardian states that it intends to proffer testimony from Blaine Tanner, Neil Gurney, and Thomas Holmes, as well as certain employees of Huntington Bank and attorneys for Huntington Bank.  Guardian notes that all of these individuals, who were involved in the negotiation and drafting of the relevant transaction documents, will testify that the information received by Guardian would not have given Guardian notice of any fraud associated with the transactions.  Presumably, all of these individuals would be amenable to compulsory process in Ohio.

Guardian further observes that Michael Anthony (also proffered as a key witness for Guardian) now resides in Florida, not California, and thus that Ohio is as convenient to him as California.[7]  In addition, to the extent that AMICO seeks testimony from CMC principals Ron Fisher, Mark Fisher, and Sterling Wayne Pirtle, Guardian points out that all of these individuals are currently incarcerated, and none is located in the Southern District of California.[8]

Guardian asserts that many of the California witnesses listed by AMICO actually have no knowledge relevant to the elements of AMICO's claim for fraud against Guardian.  Guardian notes that, of the thirteen witnesses listed in AMICO's Memorandum of Law, four of them are not discussed at all in the Declaration of AMICO's counsel.  Of the eleven witnesses discussed in counsel's Declaration, two are employees or former employees of AMICO, and one is AMICO's retained expert.  The convenience of party witnesses, Guardian argues, should not weigh into the venue transfer analysis.  Two other witnesses, Mark and Ron Fisher, are currently

---

[7] Brian McMichael, another witness listed by AMICO, is also described in AMICO's counsel's Declaration as a resident of Florida.

[8] Based upon the exhibit attached to the Declaration of Aparesh Paul, Esq., it appears that Sterling Wayne Pirtle is located at the Federal Medical Center in Rochester, Minnesota; Ronald Fisher is housed in the Federal Correctional Institution in Butner, North Carolina; and Mark Fisher is incarcerated in the Administrative Maximum Facility in Florence, Colorado.

incarcerated as noted above.

The six non-party witnesses described by AMICO's counsel as residing in California include Dean Ambrosini, Keith Caneva, Bill Hanson, Eric McMichael, Scott Morgan and William Shupper.  The first four of these witnesses are former employees of CMC, and based upon the description provided by AMICO's counsel, will testify as to the operations of CMC and, possibly, as to fraudulent conduct by CMC.  AMICO states that Scott Morgan (business partner of Michael Anthony) will testify as to the establishment of the CMC lease bond program. AMICO provides no information about the nature of the testimony it anticipates from Mr. Shupper.

Guardian claims that the proposed testimony described by AMICO does not relate to the nature of this action or to the material allegations of AMICO's claim.  Guardian asserts that neither the witnesses affiliated with CMC, nor those affiliated with AMICO, can testify as to (1) Guardian's knowledge of any fraudulent activities in the CMC lease bond program; or (2) any failure by Guardian to disclose any such knowledge to AMICO.  Since AMICO does not allege that Guardian made any specific false statement to it, Guardian argues, AMICO's witnesses also cannot testify as to any justifiable reliance on such a statement.

Finally, Guardian argues, public interest factors also do not favor transfer of this case to California, since AMICO's claim against Guardian involves alleged fraud committed by Ohio residents against an Illinois resident.  California courts, according to Guardian, have little local interest in protecting an Illinois corporation from such harm.  Moreover, Guardian contends, since the elements of fraud are identical in California and Ohio, a decision as to the law applicable to AMICO's claim also should have no bearing on the question of venue.

### C.    Analysis

The Court has considered the entirety of the arguments submitted by both parties. AMICO has not submitted reply papers on this motion, and thus has not responded to Guardian's arguments regarding personal jurisdiction.  In this context, the Court reasonably could find that AMICO has conceded Guardian's arguments relating to lack of personal jurisdiction in California.  Here, however, the Court need not determine the issue of personal jurisdiction, since the Court finds, in any event, that the Northern District of Ohio is an appropriate venue for trial in this action.  AMICO's motion for transfer is <u>denied</u>.

As set forth previously in this Opinion, a Court considering a motion for venue transfer should consider both the private interests of the parties and public interest concerns. *See Moses*, 929 F.2d at 1137.  Relevant private interest factors to be considered include (1) the place of events involved; (2) the residences of parties; (3) the relative ease of access to sources of proof; (4) the availability of compulsory process for attendance of unwilling witnesses; (5) the nature and materiality of testimony to be elicited from witnesses who must be transported; and (6) the cost of obtaining attendance of unwilling witnesses. *See Sirak*, 2008 U.S. Dist. LEXIS 94328, at *4; *Rustal Trading*, 2001 U.S. App. LEXIS 19062, at *10.  Relevant public interest factors include (1) the administrative burden of proceeding in courts with congested dockets; (2) the burden of imposing jury duty on people of a community having no connection with the litigation; (3) the desirability of holding a trial nearest to those affected most by it; and (4) the appropriateness of holding a trial in a diversity case in a court most familiar with the governing law. *See Sirak*, 2008 U.S. Dist. LEXIS 94328, at *10-11.  In this case, the Court finds that the bulk of these factors either have neutral impact or weigh in favor of retaining this case in the Northern District of Ohio.

### 1.     Place of Events Involved

With respect to the private interest factors, AMICO relies heavily on the place of the events involved, alleging that the majority of relevant events occurred in California.  Guardian, on the other hand, asserts that only CMC engaged in conduct in California, while the alleged fraudulent nondisclosure by Guardian occurred in Ohio.

Neither of the parties, however, is entirely accurate in its characterization of the conduct relevant to AMICO's fraud claims.  As Guardian points out, AMICO construes the relevant conduct too broadly, and includes conduct by CMC and AMICO in underwriting and issuing the CMC lease bonds.  It is plain that the conduct of CMC and AMICO in these areas, as well as activity constituting alleged fraud <u>by CMC</u> in California, are not directly relevant to AMICO's fraud claim against Guardian, which is the only claim remaining for trial in this case.

Guardian, however, construes the relevant conduct too narrowly, when it asserts that any alleged fraud by Guardian must necessarily have occurred in Ohio.  It is undisputed that Blaine Tanner traveled to California on several occasions to investigate the CMC lease bond opportunity, and also spent time in California socializing with Michael Anthony.  If AMICO could provide any evidence (and the Court does not speculate as to the likelihood of such evidence) that any of these contacts with California gave Tanner knowledge of any fraudulent conduct by CMC, then Tanner undoubtedly would have engaged in conduct in California relevant to AMICO's claims.  In addition, the Whitfield letter, which is the center of AMICO's nondisclosure claims against Guardian, was sent to Guardian from California, and was forwarded by Tanner to Michael Anthony in California via fax.

Guardian also is correct, however, that some of the relevant events, including Guardian's <u>receipt</u> of the Whitfield letter and the closing of the transactions, occurred in Ohio.  Presumably,

AMICO's claim of fraudulent nondisclosure stems in part from Guardian's failure, at or before closing of the transaction, to disclose to AMICO information that Guardian allegedly knew. Guardian learned the information in question via receipt of the Whitfield letter at its offices in Ohio, and any failure by Guardian to disclose that information at closing also would have occurred in Ohio.  It is apparent that Ohio has at least some relationship to AMICO's claims, since portions of the relevant events occurred in Ohio as well as California.

The Court finds, accordingly, that this factor either is neutral or weighs slightly in favor of an Ohio forum.

### 2.        Residences of the Parties

Undisputedly, AMICO is an Illinois corporation with its principal offices in Illinois, and the Guardian Entities maintain their principal offices in Ohio.  Tanner asserts that he resides in Ohio as well; AMICO disputes this claim, and contends that Tanner is a resident of Arizona.  In any event, the parties do not dispute that none of them reside in California.  Accordingly, this factor weighs in favor of retaining this action in an Ohio forum.

### 3.        Relative Ease of Access to Sources of Proof

In connection with this factor, the Court examines the convenience of access to documentary and other evidence relevant to AMICO's fraud claims.  AMICO asserts that this factor weighs in favor of a California forum, since (1) the transaction documents were executed in California and stored there; and (2) A&M also maintained its documents at its offices in California.  As noted by Guardian, however, ease of access to documentary proof is given only minor consideration in light of modern discovery methods and technology now available for transmission of documents. *See Invacare Corp.*, 2004 U.S. Dist. LEXIS 28169, at *14-15.

It would be particularly inappropriate to give undue weight to the California location of

documents in this action, given that (1) the parties conducted extensive discovery, exchanging documents and other evidence over a period of approximately four years; and (2) this Court ordered the establishment of two document depositories <u>in Ohio</u> over eight years ago, in connection with the consolidated multidistrict litigation proceedings. *See* Document Depository Order issued April 29, 2003, 02-16000, Doc. 190.  Pursuant to that Order, documents relevant to all of these cases have been maintained in this district for many years, and presumably remain easily accessible here.  In any event, it is doubtful that the transaction documents—including the leases, lease bonds and SSAs—are material to AMICO's claims of fraudulent nondisclosure against Guardian.

Accordingly, the Court finds that this factor is neutral and weighs in favor of neither a California nor an Ohio forum.

### 4.      Availability and Cost of Obtaining Witness Testimony

The Court examines together the factors relating to the testimony of essential witnesses in this matter, including (1) the availability of compulsory process to compel the testimony of unwilling witnesses; (2) the nature and materiality of witness testimony; and (3) the cost of transporting witnesses.  On the whole, the Court finds that the balance of these factors also does not weigh in favor of transfer to the Southern District of California.

Undisputedly, AMICO has designated several witnesses located in California as having testimony relevant to AMICO's claims in this matter.  Among these witnesses are certain former personnel of CMC, as well as AMICO's California underwriter and its expert.  AMICO has failed to demonstrate, however, that the California witnesses are unwilling to testify in Ohio, or that these witnesses have material testimony in connection with AMICO's fraud claim.

As Guardian points out, the Sixth Circuit has held that little significance should be

attached to the compulsory process factor where a movant fails to show unwillingness of the relevant witnesses to testify. *See Duha*, 448 F.3d at 877.  Here, AMICO has entirely ignored the issue of willingness, and has failed even to allege that any of its proffered witnesses would refuse to testify in Ohio.  It is plain that AMICO's party witnesses—including employee witnesses and AMICO's expert—could be produced to testify in any jurisdiction.  As to the other California witnesses, primarily former CMC employees, there is no showing, or even any allegation, of unwillingness to testify in Ohio.

Moreover, AMICO has provided little detail about the testimony expected from each of its California witnesses, and has not explained how any of these witnesses has knowledge specifically relevant to the fraud claims against Guardian.  In fact, as Guardian notes, the section of AMICO's counsel's Declaration describing the anticipated testimony of AMICO's California witnesses does not mention Tanner's name, or the name of any Guardian Entity. *See* Gascou Declaration, 02-16017, Doc. 74-1, at 5-8.

Given the nature of AMICO's claims against Guardian, it appears unlikely that all of AMICO's listed California witnesses, or even the majority of them, could have knowledge directly relevant to the elements of AMICO's fraud claim.  Most of the listed witnesses are former CMC employees, who likely will testify only as to (1) CMC's operations; and (2) fraudulent conduct by CMC.  Although it is not impossible that some of these employees could testify that they conveyed information regarding the fraud to Guardian, AMICO has not claimed that it anticipates any such testimony.  While, again, AMICO's description of each witness's expected testimony is vague, it appears that many of the California witnesses would provide testimony only tangentially relevant to AMICO's claims against Guardian.

Even assuming that AMICO's California witnesses have knowledge relevant to the

claims at issue, numerous other witnesses <u>not</u> residing in California also are likely to be proffered on behalf of both parties. Certain of these witnesses are located in Ohio. Guardian states that it intends to proffer the testimony of Blaine Tanner, as well as the testimony of Guardian's attorneys, Neil Gurney and Thomas Holmes, and the testimony of certain Huntington representatives. All of these witnesses would be available to testify at trial in Ohio.

The parties apparently agree that Michael Anthony, likely to be a key witness for both parties, now resides in Florida. Thus, an Ohio venue would presumably pose no greater inconvenience to Mr. Anthony than would California. Further, to the extent that either party seeks to introduce live testimony from CMC principals Ron Fisher, Mark Fisher and/or Wayne Pirtle, it appears that obtaining such testimony would be extremely inconvenient regardless of venue, since all three of these individuals are incarcerated, and are located in states other than Ohio or California.

It is clear that, regardless of the Court's decision on AMICO's motion to transfer venue, both parties will incur some cost to transport relevant witnesses for trial. AMICO has not demonstrated, however, that it is substantially more burdensome for AMICO to transport its California witnesses to Ohio than for Guardian to transport its Ohio witnesses to California. In addition, while the Court is cognizant of AMICO's related case against Anthony and A&M, which remains pending in the Southern District of California, the Court also recognizes that Tanner and the Guardian Entities are party to nine related actions, all of which are pending here in the Northern District of Ohio. In such a context, the most likely result of a venue transfer would be merely to "transfer the inconvenience from one party to the other." *ALCOA*, 875 F. Supp. at 433.

Under these circumstances, it is impossible for the Court to find that AMICO has met its

burden of showing that California is a more convenient venue than Ohio from the standpoint of obtaining relevant witness testimony.  The Court finds that this factor is neutral, and does not favor either a California or Ohio forum.

> ### 5.   Public Interest Factors

Neither party has devoted substantial attention to examining the public interest factors relevant to AMICO's venue transfer motion in this case.  AMICO has asserted that California has a more significant interest in this case, since (1) the bonds were issued to CMC, a California obligee; and (2) this Court has determined that the transaction documents are governed by California law.  Guardian, on the other hand, asserts that California has no local interest in this litigation, because (1) there are no California parties involved in this litigation; and (2) there is no relevant difference between Ohio and California law with regard to the elements of fraud.

The Court agrees with Guardian that the public interest factors in this case weigh in favor of retaining the case for trial in the Northern District of Ohio.  Initially, neither party has addressed the first two public interest factors, which relate to (1) the burden imposed on courts due to their congested dockets; and (2) the burden imposed on the public by jury duty in an action with no connection to the local community.  In the Court's view, these factors lend no support to AMICO's motion to transfer.  While no evidence has been introduced on this motion relating to the congestion of dockets in the Southern District of California, there is no indication that those dockets are less congested than those of the judges located here in the Northern District of Ohio.  Moreover, given that the Guardian Entities maintain their offices in this district, and Tanner claims residence in this district, the Court is unable to find that this action has "no connection" to this district, or that imposing jury service on residents of this district would unduly burden the local community.

Further, as regards the balancing of local interests, Guardian is correct in noting that this case involves no California parties.  California can have no local interest in protecting an Illinois corporation from fraud allegedly committed by Ohio residents.  The fact that the lease bonds were drafted and issued in California does not bear on this analysis, since AMICO's fraud claims are not premised upon interpretation of the lease bonds.

The Court also rejects AMICO's assertion that transfer is appropriate based upon the Court's prior finding that certain transaction documents are governed by California law.  As this Court has noted on multiple occasions throughout the consolidated multidistrict litigation, the Court's choice of law finding was limited to claims asserted by the parties premised upon the transaction documents, and did not encompass tort claims such as fraud. *See, e.g.*, Memorandum of Opinion and Order dated October 3, 2006 (02-16000, Doc. 1865), at 64, n. 32.  Throughout this litigation, in evaluating claims not premised upon contract, the Court has not restricted its analysis to the law of California.  In fact, in considering summary judgment motions filed by several Sureties relating to the Banks' tort claims, the Court applied the law of various states, including Ohio and Georgia. *See* Memorandum of Opinion and Order dated March 11, 2009 (02-16000, Doc. 2214).  In any event, AMICO does not claim that there is any material difference between California and Ohio law as they relate to the elements of AMICO's claim for fraudulent nondisclosure.

Thus, to the extent AMICO suggests that transfer to a California court is appropriate based on a California court's greater familiarity with the local law, the Court rejects any such assertion.  As noted, even if California law applies to AMICO's claims, there appears to be no relevant difference between California and Ohio law regarding the elements of fraud.  Moreover, this Court has presided over these consolidated actions for more than eight years, and has

25

unparalleled familiarity with the enormously complex factual background, as well as the legal issues involved in these cases.  Given this Court's extensive experience with this litigation, this Court is eminently familiar with the relevant legal principles, and the Court's "institutional knowledge" renders it uniquely qualified to preside over a trial in this matter.  Additionally, since this Court will preside over trials in nine cases involving similar legal issues, retaining the action in this jurisdiction furthers the interests of judicial economy.

Accordingly, the Court finds that the relevant public interest factors weigh in favor of an Ohio venue in this action.

### 6.    AMICO's Failure to Show that California is More Convenient

As explained above, the Court has determined that each of the private and public interest factors relevant to the venue transfer inquiry either has neutral impact, or weighs in favor of retaining this action in the Northern District of Ohio for trial.  AMICO, as the movant, bears the burden of demonstrating, "by a preponderance of the evidence[,] that the forum to which it desires to transfer the litigation is the more convenient one vis a vis the plaintiffs' initial choice." *ALCOA*, 875 F. Supp. at 433 (internal quotations omitted).  AMICO has failed to satisfy that burden here.

AMICO has argued that California is the most appropriate venue for this action since, in AMICO's view, the majority of events relevant to AMICO's claims occurred in California. Guardian disagrees, and asserts that all material conduct occurred in Ohio.  Which party is correct is, in fact, irrelevant here, since the Court need not determine the "best" venue, and need only determine whether the venue selected by the plaintiff has a substantial connection to the claims at issue. *See, e.g., First of Michigan Corp*, 141 F.3d at 263; *Setco Enterprises Corp.*, 19 F.3d at 1281.  Given that a significant portion of the relevant events occurred in Ohio, Ohio

undoubtedly has a substantial connection to AMICO's fraud claims against Guardian.  Under such circumstances, the Court's venue inquiry is at an end, and AMICO's venue transfer motion must be denied.

## IV.    Conclusion

For the reasons set forth herein, AMICO's motion to transfer venue to the Southern District of California (02-16017, Doc. 74) is denied.

**IT IS SO ORDERED.**

__s/Kathleen M. O'Malley_____
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: June 17, 2011**

83995-1